Bockee, Senator.
A new trial ought to have been granted in this cause, on the ground of misdirection by the judge at the circuit. It is assumed by "the judge, and the fact sufficiently appears by the testimony, that the canal commissioners, by their agents, did authorize the defendants in the court below to raise their dam to the level of the top water line originally intended by the plan for making the lake a reservoir for canal purposes. The consequential injury, if any, flowing from this elevation of the Gillet dam, by the direction of the canal officers, and for canal purposes, ought not to be charged against the defendants.. *358 If the canal commissioners had a right to erect any structure by which the water should be raised to the level established by them, six and a half feet above the bottom of the canal, which I think cannot be disputed, it is not -very material whether they carried this purpose into effect by erecting a state dam, or by a temporary structure, or by raising the defendants’ dam, or by directing them to do it. During the two seasons of canal navigation from March, 1834, until the state dam was finished, I conceive the defendants were protected by the acts and authority of the canal officers, and ought not to be held responsible for damages. When the state dam was completed, and the waste gates were shut, it appears to me that, according to the laws of hydrostatics, a dam on the stream below, of the same height with the state dam, could have no possible influence in raising the waters of the lake. The only effect of it would be to make a prism of water between the two dams. When the waste gates on the state dam are open, then only can the defendants’ dam make back water in the lake. The waste gates are then rendered useless, and for this injury the defendants may be liable. It does appear from the case that the water of the lake has been raised for canal navigation, and if injury to the adjacent land arises from this cause, it is not just to make the defendants responsible for it. It does also appear that various causes, both natural and artificial, are in operation to influence the rise of water in the lake. It would require a knowledge of localities and an observation of the visible operation of those causes to arrive at any just conclusion. I think injustice has been done to the plaintiffs in error, by making them liable for acts done under the legal authority and direction of public agents. During the summers of 1834 and 1835, it was exclusively the act of the public authorities for public purposes which obstructed the outlet of the lake. I suppose when the gates are closed, that the fluidity of water will keep the lake at the permanent elevation of six and a half feet above the bottom of the canal. There may be an exception, limited in extent and duration, in time of flood, but the variation cannot much exceed the depth of the column of water passing over the dam, and *359 cannot long continue. It does not appear to me that the spring floods can be the principal cause of injury. Some of the best land in the world is subject to annual overflow, and is enriched by it. The continued overflow caused by raising the permanent elevation of the lake, appears to me the main source of injury, and for this the defendants below should not be held liable; or liable only to a limited extent, and for that proportion of damage caused by their own acts. The judgment of the supreme court should be reversed and a new trial granted.
Senator Root delivered an opinion in favor of affirming the judgment of the supreme court.
On the question being put, “Shall this judgment be reversed?” the members of the court voted as follows:
For reversal: The President, and Senators Bockee, Chamberlain, Deyo, Foster, Hopkins, Lott, Mitchell, Platt, Rhoades and Scott—11.
For affirmance: Senators Denniston, Faulkner, Hard, Lawrence, Porter, Putnam, Root, Strong and Varían —9.
Judgment reversed.